UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | Criminal No. 2:17-CR-70 |
| v. | ) | |
| | ) | |
| JULIO FERNANDO PINO, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S POSITION ON SENTENCING

The United States of America now submits its position on sentencing. In the Presentence Investigation Report (PSR), the U.S. Probation Office determined that the guidelines sentencing range is a term of 87–108 months' imprisonment on Count One of the Criminal Indictment, False Statement in Connection with Purchase of Firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

The defendant's guidelines range stems from a base offense level of 20 because he was "convicted under … § 922(a)(6) … and committee the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person." U.S.S.G. § 2K2.1(a)(4)(B). He received a six-point enhancement because the offense involved "25–99" firearms. U.S.S.G. § 2K2.1(b)(1)(C). "Specifically, he purchased at least 60 firearms, … advertised at least 50 firearms on firearms-marketplace website[s] … and resold at least 23 firearms at a profit." SOF ¶ 1. The defendant received another two-point enhancement for possessing a stolen firearm. U.S.S.G. § 2K2.1(b)(4)(C). Because "the defendant engaged in the trafficking of firearms," he received a four-point enhancement. U.S.S.G. § 2K2.1(b)(5). The defendant also received a three-point reduction for accepting responsibility, U.S.S.G. § 3E1.1(a),

(b), for a total offense level of 29. The defendant's criminal history category is I, from one reckless-driving conviction and no criminal history points.

For the following reasons, the Court should impose a 60-month sentence—a four-point downward variance below the guidelines range—which would be sufficient, but not greater than necessary, to accomplish the goals of 18 U.S.C. § 3553(a).

## I. MOTION FOR ACCEPTANCE OF RESPONSIBILITY

Under U.S.S.G. § 3E1.1(b) and based on the terms of the plea agreement, the government moves the Court to grant an additional one-level reduction in the defendant's offense level for acceptance of responsibility. The defendant timely notified the government of his intention to enter a plea of guilty, thereby allowing the government to avoid preparing for trial and permitting the Court and the government to allocate resources efficiently.

## II. BACKGROUND

In May 2017, the Grand Jury returned a nineteen-count Indictment against the defendant for firearms-trafficking offenses under Title 18 of the United States Code. This January, the government filed a single-count Criminal Information that charged the defendant with 18 U.S.C. §§ 922(a)(6) and 924(a)(2). Three days later, the defendant pleaded guilty under a plea agreement. The Court accepted the defendant's guilty plea and ultimately scheduled the sentencing hearing for September 4, 2018.

## III. ARGUMENT

In *United States v. Booker*, the Supreme Court made clear that sentencing courts should "consult [the Sentencing] Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005). The Supreme Court provided this direction to promote the sentencing goals of Congress, namely to "provide certainty and fairness in meeting the purposes of sentencing, [while]

avoiding unwarranted sentencing disparities." *Id.* (quoting 28 U.S.C. § 991(b)(1)(B)). In its recent decision in *Molina-Martinez v. United States*, the Court emphasized the role the guidelines play in achieving "[u]niformity and proportionality in sentencing" and noted that "the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar." 136 S. Ct. 1338, 1347 (2017).

The Fourth Circuit has provided the following guidance in the wake of *Booker*: "A district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and" the 18 U.S.C. § 3553(a) factors "before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). So sentencing courts must consider the factors outlined in 18 U.S.C. § 3553(a), including the need for the sentence "to reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense; [and] to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (B).

### A. Nature of and Circumstances of the Offense

The nature and circumstances of the offense are serious, but when considered with the other sentencing factors, they warrant a below-guidelines sentence.

As the defendant admits in the statement of facts, for over a year, he "engaged in the business of dealing firearms by using his military discount to purchase and resell firearms for a profit. Specifically, he purchased at least 60 firearms, posted 146 times on firearms-marketplace website www.VAguntrader.com, advertised at least 50 firearms on firearms-marketplace website www.armslist.com, and resold at least 23 firearms at a profit." SOF ¶ 1.

The defendant bought and re-sold firearms so many times that, unsurprisingly, he sold some firearms to prohibited people, including a juvenile, a drug-addicted armed robber, a drug

dealer trafficking in stolen firearms, and many others. The defendant may have been unaware that some of those people were prohibited from possessing firearms, but that was not the case with the drug dealer, who, "[d]uring the deal, … looked like he was high on drugs and offered to sell [the defendant] several grams of marijuana, but the defendant refused." PSR ¶ 28.

In fact, the drug dealer "traded a stolen Glock 19 firearm to [the defendant]" during that deal. PSR *Id.* The defendant advertised the stolen gun and, three days later, traded it to someone else for another model. PSR ¶ 29. "[A]nd the defendant endorsed [the drug dealer] and encouraged [that other customer] to buy from [the drug dealer] despite knowing that [the drug dealer] was a drug user and dealer. After [a] controlled purchase, [the drug dealer] was arrested for his role in trafficking stolen weapons." *Id.*

Law enforcement later linked some of the guns that the defendant sold to serious crimes. For example, another drug-dealing customer "continued selling drugs after he obtained the firearm, and a few days later, [he] was arrested in possession of two firearms – including the [defendant's] Glock 23 handgun – marijuana, LSD, amphetamines, and psychedelic mushrooms." PSR ¶ 16. That same firearm "was also traced back to a string of armed robberies involving" the customer and two co-conspirators." *Id.* To be clear, though, "[t]here is no evidence that [the defendant] was aware that the firearm was involved in connection with other felony offenses." *Id.*

After the defendant resold two brand-new Glock handguns, one of those guns "was found abandoned in the middle of the street in the 600 block of Glen Falls Court in Virginia Beach, Virginia," and "law enforcement [later] recovered the [other gun] while executing a search warrant of [a suspect's] home in the 3800 block of Meadowbrook Court in Virginia Beach, Virginia, after [the suspect] brandished the Glock to threaten another person." PSR ¶ 60. Yet another of the

defendant's guns "was later recovered by law enforcement involved in a maiming investigation." PSR ¶ 32.

During his firearms-trafficking scheme, he lied on military exchange Form 4473s at least thirteen times and also lied to law enforcement. *See, e.g.*, PSR ¶¶ 10–12, 14–15, 17, 20–21, 25, 27, 30–31, 34, 38–39, 42–43, 45, 49, 51–52, 54–55, 58–61. And despite repeated warnings by ATF agents, he continued to sell guns without a license, even after telling them that he would stop. PSR ¶¶ 63–64, 66, 70.

After being charged, the defendant immediately confessed and accepted responsibility. He also voluntarily turned over incriminating evidence to the government at several different stages of the investigation.

In short, the defendant committed very serious crimes, enabled some very bad people to obtain guns, and put the community at serious risk. But he did not realize what he was doing was illegal and he did not know what was going on once he sold the guns, somewhat reducing his culpability.

B.  History and Characteristics of the Defendant

The defendant's history and characteristics support a 60-month sentence.

The defendant was born on Long Island and lived in Puerto Rico during his teenage years. When he turned 19, he enlisted in the U.S. Navy. PSR ¶ 100. He had a good childhood and was raised in a good family. PSR ¶¶ 102–03, 105. His wife is also in the Navy. PSR ¶ 104. The have a child together. PSR ¶ 106. As mentioned above, the defendant has no felony convictions and just one driving conviction.

The defendant has six years of Navy service, which is admirable. Until his sentencing, the defendant will have been serving on the U.S.S. George H.W. Bush, a nuclear-powered, Nimitz-

class carrier. He is a Petty Officer Third Class and his Military Rate is Aviation Ordnanceman. Aviation Ordnancemen are highly trained aircraft-armament specialists responsible for storing, serving, inspecting, and handling all types of weapons and ammunition on naval aircraft. For example, they load bombs onto F-18s before the planes are catapulted from the deck of the carrier for air operations. That is impressive work that shows just how much the defendant has been contributing to the community.

Because he did not sign the record release, however, the Court is left largely unaware of his Navy conduct, performance, and training. PSR ¶ 112. "He [naively] claims he is trying to maintain his military career and hopes that the instant offense will not impact his career." *Id.* But he is mistaken: a federal felony conviction, coupled with dozens of false statements on federal forms, effectively ends his military career. And he is subject to administrative-separation processing from the Navy, as his felony conviction prevents him from carrying a firearm. The conviction also impacts his required secret-security clearance.

Further, the conviction is binding on the Navy administrative discharge board. In other words, the board must find that misconduct occurred. And if the board recommends a discharge, the only remaining question is how to characterize the discharge. Given he misused his Morale, Welfare and Recreation privileges, the defendant may receive an "Other Than Honorable" discharge. The Court should consider that the defendant will receive additional punishment from the military once he is sentenced.

    C.    <u>Other Factors To Be Considered Under Section 3553(a)</u>

The remaining factors also support a below-guidelines sentence. The offense is serious, but not as serious as those committing violent or drug-trafficking crimes. The guidelines range is very high for someone with no criminal history and who only sold firearms, which suggests that a

below-guidelines sentence would provide just punishment. The public will be safer with the defendant in prison, but a seven- to nine-year sentence will provide only diminished returns compared to a 60-month sentence. And a 60-month sentence is sufficient to deter the defendant from committing new crimes, especially since he now understands how bad his conduct was and how the community has been hurt by his actions. The defendant is unlikely to recidivate.

## IV. CONCLUSION

Based on all of the factors under 18 U.S.C. § 3553(a), a downward variance to 60 months in prison is sufficient but not greater than necessary.

                                                      Respectfully submitted,

                                                     G. ZACHARY TERWILLIGER
                                                     UNITED STATES ATTORNEY

By:           /s/_____
       William B. Jackson
       Kevin M. Comstock
       Assistant United States Attorneys
       Attorney for the United States
       United States Attorney's Office
       101 West Main Street, Suite 8000
       Norfolk, Virginia 23510
       Telephone: (757) 441-6331
       Facsimile: (757) 441-3205
       E-mail: william.jackson3@usdoj.gov
       E-mail: kevin.comstock@usdoj.gov

# CERTIFICATE OF SERVICE

       I hereby certify that on the 28th day of August, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record including:

           Keith L. Kimball
           Lindsay McCaslin
           Office of the Federal Public Defender
           150 Boush Street, Suite 403
           Norfolk, VA 23510
           Telephone: (757) 457-0800

       I hereby certify that on the 28th day of August, 2018, I sent by electronic mail a true and correct copy of the foregoing to the following:

           Kristie M. Milby
           U.S. Probation Officer
           Walter E. Hoffman U.S. Courthouse
           600 Granby Street, Suite 200
           Norfolk, VA 23510

           _____/s/_____
           William B. Jackson
           Assistant United States Attorney
           Attorney for the United States
           United States Attorney's Office
           101 West Main Street, Suite 8000
           Norfolk, Virginia 23510
           Telephone: (757) 441-6331
           Facsimile: (757) 441-3205
           E-mail: william.jackson3@usdoj.gov