IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 2:17cr70 |
| | ) | |
| JULIO FERNANDO PINO, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING FACTORS**

The defendant, Julio Fernando Pino, by counsel, pursuant to Section 6A1.2 of the *Sentencing Guidelines and Policy Statements* and the Court's Sentencing Procedures Order, respectfully states that he has reviewed the Presentence Report ("PSR"), does not have any objections to the PSR and states his position with respect to the sentencing factors.

Mr. Pino is before this Court for sentencing following his guilty plea to Count 1 of a Criminal Information charging him with False Statement in Connection with the Purchase of a Firearm in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2). Mr. Pino pled guilty, pursuant to a plea agreement, on January 29, 2018. A PSR has been prepared and disclosed to the parties. Sentencing is scheduled for September 4, 2018 at 10:00 a.m.

Mr. Pino's advisory guideline range is 87 to 108 months of confinement. Mr. Pino respectfully requests that this court impose a sentence substantially below the advisory guideline range since the sentence recommended by the Guidelines is greater than necessary to comply with the sentencing factors of 18 U.S.C. § 3553(a). Specifically, the defense requests a sentence of probation.

**The Appropriate Sentence in this Case**

In determining Mr. Pino's sentence, the Court is to consider:

    (1) the nature and circumstances of the offense and the history and characteristics of Mr. Pino;

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of Mr. Pino; and

        (D) to provide Mr. Pino with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

    (4) the kinds of sentences and the sentencing range established for the offense;

    (5) any pertinent policy issued by the Sentencing Commission;

    (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

    (7) the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a). Neither the statute itself nor *United States v. Booker*, 543 U.S. 220 (2005), suggests that any one of these factors is to be given greater weight than any other factor. As the Court well knows, the Court is required to impose a sentence sufficient, but not greater than necessary, to comply with the above factors.

### **The History and Characteristics of the Mr. Pino**

    Julio Pino is a young man of 25 years of age. He is married but currently separated from his wife. He and his wife have a baby boy who is 14 months old. Mr. Pino is in the United States Navy

as is his wife.

Mr. Pino was born in New York. His parents moved to Puerto Rico when Julio was about 14 years old. His parents still live in Puerto Rico. Julio has one brother, age 24, who is a recent college graduate and also lives in Puerto Rico.

Julio was raised in a good family and he did not get into any trouble as a child. Mr. Pino's mother described him as "an active child" growing up who "enjoyed sports." PSR ¶ 105. His parents are rightfully proud of his Navy service.

Julio graduated from high school in 2011. He attended college at Penn State University that following fall but stopped attending after one year. In December of 2012, Julio joined the Navy. He is currently stationed on the USS George H.W. Bush. His current rank is E4. According to Navy Evaluation Reports and Counseling Records, Mr. Pino has done well in the Navy and has received positive remarks from his supervisors and command representatives. PSR ¶¶ 124-130. Mr. Pino had planned to make the Navy a career but the instant offense has put that plan in serious jeopardy.

Mr. Pino married his wife in April 2016. His wife is a machinist mate in the Navy and is currently stationed in Norfolk (shore duty). Unfortunately, Mr. Pino and his wife have been separated for approximately four months. The instant offense and the pending sentence have not helped their marriage. Mr. Pino loves his son very much and is very worried about being away from him if sentenced to prison.

Mr. Pino is in good physical health and has no history of any mental health problems. He does not have a substance problem. Finally, Mr. Pino has no prior criminal history and is a very low risk to violate the law in the future.

**The Nature and Circumstances of the Offense**

The offense conduct section of the PSR details what Mr. Pino did in this matter. In sum, for a little over a year, Mr. Pino purchased and sold multiple firearms to various people. He did not have a license to sell firearms and also consistently represented on ATF Form 4473 forms that he was the actual buyer even though he planned to re-sell the majority of the firearms he purchased. He tried to be careful about who he sold the firearms to but realizes he was unlawfully buying and selling firearms. He unknowingly sold a few firearms to prohibited persons and, at least on one occasion, regrettably sold a firearm to someone who had been using drugs. In retrospect, Mr. Pino knows that he exercised extremely poor judgment by unlawfully selling firearms.

One would think that Mr. Pino made a handsome profit unlawfully selling guns. However, the reality is that he was not making much more than $50 to $150 (at most) per sale. Whatever the total "profit," Mr. Pino more than recognizes that it was far from worth it. He is now a convicted felon and stands to lose his Navy career.

Furthermore, when initially approached by ATF agents, Mr. Pino met with agents voluntarily, was honest about his actions, and provided all photographs or videos he took of the sales. These videos and photographs provided the government with ample evidence about his own conduct that the government likely would not have had otherwise. His candor provided the basis for much of the conduct listed in paragraphs 10 through 71 of the PSR (and arguably the increase in the guideline range).

Following the return of the indictment in May of last year, Mr. Pino was arrested on August 19, 2017, in Jacksonville, Florida, where his ship was at the time. He went into custody until October 13, 2017, when he was released on an unsecured bond after his initial appearance in this

Court.

Mr. Pino relatively quickly decided to plead guilty and has been very cooperative during this prosecution. He has accepted responsibility for his actions and assures the Court that he will not violate the law again in the future.

**Seriousness of the Offense/Promoting Respect for the Law/Providing Just Punishment**

The defense respectfully submits that a sentence of probation would reflect the seriousness of the offense and promote respect for the law considering Mr. Pino's lack of a criminal history, his cooperation in this case and the unlikelihood that he will violate the law in the future. Mr. Pino had never before been arrested and then was incarcerated for almost two months following his federal arrest before being released on bond. In short, he has seen and spent time inside a jail cell. In addition, that he is now a convicted felon and may well lose his Navy career is significant additional punishment to Mr. Pino. He has been in the Navy for almost six years and had planned to serve at least twenty years. A term of imprisonment will likely lead to either a dishonorable discharge or an other-than-honorable discharge. This will be in addition to the money and benefits that Mr. Pino would have received and been entitled to for remaining in the Navy for at least twenty years. These collateral consequences will follow Mr. Pino for the rest of his life and thus will be continuing punishment to him.

**Deterrence & Protecting the Public from Mr. Pino**

Mr. Pino has been more than deterred by this federal prosecution. As noted above, he spent almost two months in jail before being released on bond. He initially did not know the full potential consequences of his actions but quickly realized what he now faces. The thought of spending time in a federal prison for the last year has weighed on Mr. Pino and has specifically deterred him from

having any desire to engage in similar conduct or other criminal conduct in the future.

Mr. Pino has no criminal history and did not seek to put guns in the hands of people who would use them to commit crimes (although in retrospect he sees that he did and is very remorseful). His personality is far from intimidating or aggressive. Rather he is a calm young man who is determined to never find himself on this side of the law again in the future. In sum, the public does not need to be protected from Mr. Pino.

### The Kinds of Sentences Available/Sentence Recommended by the Guidelines

The statutory range of punishment is no incarceration up to ten (10) years of imprisonment. The Guidelines recommend imprisonment from 87 to 108 months (offense level of 29, criminal history category of I). Of course, the guideline range is advisory and but one factor for the Court to consider when deciding upon the appropriate punishment pursuant to 18 U.S.C. § 3553(a). As noted earlier in this pleading, the defense submits that the guideline range in this particular case, as applied to Mr. Pino, is excessive and greater than necessary.

The base offense level for Mr. Pino's guidelines is 20 under U.S.S.G. § 2K2.1(a)(4)(B). This base offense level was based on the offense involving a "semiautomatic firearm that is capable of accepting a large capacity magazine," Mr. Pino was convicted under 18 U.S.C. § 922(a)(6) and "committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person." *See* U.S.S.G. 2K2.1(a)(4)(B). To be sure, admittedly Mr. Pino was involved in many transactions of firearms. However the vast majority of the transactions did not involve prohibited persons. Mr. Pino's guidelines were also increased for a firearm being stolen pursuant to § 2K2.1(b)(4)(A). Mr. Pino did not sell a stolen firearm; rather on two occasions he received stolen firearms in trades (*see* PSR ¶¶ 28 and 29) - but

he did not know the firearms had been stolen. The guidelines are increased for a firearm being stolen even if a defendant, like Mr. Pino, did not have knowledge of the firearm being stolen. *See,* U.S.S.G. § 2K2.1, comment. (n. 8(B)). So while the guidelines have been correctly calculated, they overstate the majority of Mr. Pino's gun sales. The transactions that are the basis for the base offense level and the enhancement for stolen firearms are outliers. In the defense's view, these facts and circumstances support the defense's position that the guideline range is greater than necessary to address the sentencing factors of 18 U.S.C. § 3553(a).

### Providing Educational/Vocational Training or Medical Care/Correctional Treatment

Mr. Pino is a high school graduate and has done relatively well in the Navy. While it would benefit him to further his education, he does not need to be sent to prison in order to do so or for him to aquire a trade or vocation. Mr. Pino also does not have any substance abuse problems or any need for correctional treatment to be provided.

### Avoiding Unwarranted Sentencing Disparities

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct. 18 U.S.C. § 3553(a)(6). The court should avoid unwarranted similarities in sentencing among defendants who are different in ways not accounted for in the guideline range. *See Gall*, 552 U.S. at 55 ("need to avoid unwarranted *similarities* among other co-conspirators who were not similarly situated"). Mr. Pino's case, history, characteristics, and similar case characteristics, warrant a sentence below the guideline range and would not result in any unwarranted sentence disparities.

### Conclusion

Mr. Pino respectfully requests that this Court give consideration to the foregoing factors and

find that a sentence anywhere within or close to the advisory guideline range would be overly harsh and greater than necessary. Accordingly, in light of the statutory factors and arguments above, Mr. Pino respectfully asserts that a sentence of probation be imposed. Should the Court disagree with the defense request for probation, the defense respectfully requests that the Court recommend to the Bureau of Prisons that he be incarcerated in a prison as close as possible to the Tidewater region of Virginia. Finally, should the Court impose a sentence of imprisonment, the defense respectfully requests that Mr. Pino be allowed 30 to 45 days to self-surrender to begin serving his sentence.

                                                    Respectfully Submitted,

                                                    JULIO FERNANDO PINO

                                                    By:            /s/           
                                                    Keith Loren Kimball
                                                    Virginia State Bar No. 31046
                                                    Supervisory Assistant Federal Public Defender
                                                    Attorney for Defendant Julio Fernando Pino
                                                    Office of the Federal Public Defender
                                                    150 Boush Street, Suite 403
                                                    Norfolk, Virginia 23510
                                                    Telephone: 757-457-0800
                                                    Telefax: 757-457-0880
                                                    Email: keith_kimball@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of August, 2018, I will file the foregoing with the Clerk of Court, and mail a true and correct copy to the following:

> William B. Jackson, Esquire
> Kevin Comstock, Esquire
> Assistant United States Attorneys
> 101 West Main Street, Suite 8000
> Norfolk, Virginia 23510
> Email: william.jackson3@usdoj.gov
>     kevin.comstock@usdoj.gov

I further certify that a true and correct copy of the foregoing document has been sent by electronic mail to following non-user:

> Kristi Milby
> Senior United States Probation Officer
> United States Probation Office
> 827 Diligence Drive, Suite 210
> Newport News, Virginia 23606
> Email: kristie_milby@vaep.uscourts.gov

> _____/s/_____
> Keith Loren Kimball
> Virginia State Bar No. 31046
> Supervisory Assistant Federal Public Defender
> Attorney for Defendant Julio Fernando Pino
> Office of the Federal Public Defender
> 150 Boush Street, Suite 403
> Norfolk, Virginia 23510
> Telephone: 757-457-0800
> Telefax: 757-457-0880
> Email: keith_kimball@fd.org